et al. Good afternoon. May it please the court. My name is Rory Bellantoni, and I represent the plaintiff appellants in this matter. At the due process hearings before the IHO, on the Department of Education's case, not on the parents' case, while the department was offering proof that it could implement the student's IEP, a question was asked on cross-examination if the school was handicapped accessible. And the answer was, the entrance is, but I'm not sure about the rest of the school. Ultimately, the IHO found that the DOE did not meet its burden of showing that it provided this student a fate, because the IHO found that the record, the only evidence in the record, was that the school was inaccessible. Now the SRO talks about there being one line, one sentence, a record that was not very well developed. There's no indication here that the DOE itself couldn't have developed the record further. There's language in this case about the parents sandbagging the DOE, but the parent didn't know in this case that the school was not handicapped accessible. Almost every definition of sandbagging involves an attorney or an individual or a party who has knowledge and holds that knowledge back, hides it, uses it strategically, perhaps unfairly, to their advantage and someone's disadvantage.  This is the district's IEP. The district's IEP on page 753 of 755, not of the appendix. This is in the record below. Indicates that the student needs a wheelchair accessible building, the student has limited mobility, the student uses a wheelchair, and yet the DOE acts as if it did not have notice that this school was not handicapped accessible. The SRO, and to some extent the district court, discussed that this was somehow unfair at the appendix page 174. The district court talks about because the issue of wheelchair accessibility was limited to a single question on cost, the school district was never provided the opportunity to develop why the placement school was appropriate to implement the IEP. That's problematic in and of itself. Right, because the district court says that they did not develop why the IEP was appropriate and could be implemented. I'm sorry, what page is it? It's on page appendix 174. It's the second paragraph. The district court then goes on to say what facilities were available at the placement school was never developed, nor did the record reflect whether 80s classes were limited to its first floor. Apart from whether or not the parent preserved this issue in the due process complaint, the district has the burden to show that it provided an IEP. There has to be, although it's not discussed in any case law, I can find a prima facie standard. We find case law that talks about what the IEP itself is meant to do, but we don't find much case law about the facility. The district and the IHO, I believe it's on page 37 of the IHO's FOFD, talks about the witness from the school district that testified generally that this is the placement witness. This is in the appendix to 37. Don't refer to the placement witness to pages 13 and 20 of the May 2020 IEP, and ask the witness to confirm that the placement program could implement the management needs and recommendations on those pages. And then ask a professional opinion about the placement program or the placement program's ability to implement the student's 2020-2021 IEP. The answer was the recommendations that are listed on the recommended special education program and service as written, we would be able to provide those services. Focusing on the classroom, the class size, the programs, occupational therapy, speech therapy that were being offered to the child. But fundamentally, the child has to be able to access this program. If the SRO felt the IHO erred in that the record was not fully developed, he could have remanded this case back to the IHO. Was there a request to that effect? I know there was a request before the district court. I don't know if there was a request before the SRO. But the SRO has that ability. It's part of the New York State education law. In a footnote, the SRO talks about the record not being developed. The SRO even talks about this placement issue going to the heart of this matter. If it goes to the heart of the matter, then this is one of those exceptions to whether something has to be played. In footnote, I'm sorry, it's, I believe it's six on page, the appendix is 74. Further, while the IHO's finding that the assigned school building was not wheelchair accessible appears to go to the heart of the school being factually incapable of implementing the student's IEP, the testimony only addressed the building as being accessible at the entrances. But again, any failure to develop the accessibility is something that should be held against the department. I think where the IHO went wrong, although the holding was correct, instead of trying to somehow fit the parent's grief into the due process complaint, if the IHO had simply said here, I found that the district has not met its burden of showing that the program is accessible. Would you remind me, were the parents counseled here, or? Yes, your honor. And initially, in this case, the district served a school location letter two business days before the school started. And then the school was not available to be seen. There is no way the parent would have known here, or counseled, that the school didn't have wheelchair accessible ramps. And again, the way this came up during the hearing, there was a question on cross-examination about accessibility, because my client can only ambulate in a wheelchair. Not ambulate, I apologize, but needs a wheelchair to get around. So again, I don't think under prong one, in New York especially, the parents do not have a burden to show the school is inaccessible. It would be the department has a burden to show it is accessible. And this may not be some- Do we have some precedent along those lines, or? Not as far as- I think what you're asking, I'm not sure that I fully appreciated this, but now I do, I believe. You're asking us to place on the defendant, effectively a permanent burden to make determinations when there's nothing, or an insufficient record to go back, to have the SRO go back and further develop the record. Is that what you're asking? It would be one solution, Your Honor, where the DOE has this burden. Let's go before the due process proceedings. It created an IEP. The CSE meeting where they recognized this student needs a wheelchair accessible school. That's, I gave you a page number before. But simply saying it in the IEP is not a starter. They can give this child the best program that ever existed, but if it doesn't exist, if they assign the child to PS 12, but there is no public school 12, then the child has been denied a fate. The fact that the attorney, either now or at the district court level, wasn't aware of whether or not the school was handicapped accessible doesn't excuse the Department of Education from knowing this. So you're confirming that that's your argument? And under Schaefer, after the Supreme Court put the burden, I guess it's Schaefer versus West, I'm not sure how you pronounce the case, but on whoever brings the due process complaint, New York State Legislature convened and made sure that that burden wasn't on the parents under prong one, it's on the school district. And while there's, again, volumes of case law on what makes up- What is the status of your client, AB? I'm sorry? What is the status? Status? So the child's at the same school, private school. Okay. Currently. But this is for the 2021 school year. Okay. Thank you very much. You've served some time for us all. Jim Newman, do you have any questions? No, thank you. May it please the court, Janet Zalian for DOE. The IEP, of course, covers many subjects. Therefore, this court in RE and actually the IDEA itself with regard to the subjects that can be brought up in the hearing, requires information in the due process complaint to alert the DOE about what is being challenged here. And in many cases, even in a case like this, where the parent has already signaled their enrollment of the child in the private school, by the time the due process complaint is filed and by the time the placement is offered, as often happens, the parent may go and make a pro forma discussion with DOE about the placement school and they'll add their claims about that school to their complaint because they know that they need to itemize what they want to challenge among all of the many things that would be under discussion in the IEP. Now, it is true that it was during the pandemic and schooling was remote, but the parent could well have discussed the issues with DOE to discuss the placement. What was the IHO's decision with respect to this issue? The IHO took it that the school was inaccessible. Now, what happened here is the DOE was not on notice to do something at which this court pointed out in RE can be very helpful, which is to use that 30-day resolution period to address the parent's concerns about the placement, was not on notice that this was an issue here. And the other thing that DOE was not able to do was to prepare for a hearing and develop a record to determine when you have the IEP coordinator saying that the IEP can be implemented, that the school will have, that there would be some methods that would be used to implement the IEP with regard to accessibility, with regard to, for instance, whether classes would be on the first floor, whether there would be arrangements of that nature that would be made that would take into account if in fact it was true and if the IEP coordinator was accurate that the school was wheelchair accessible only at the entrances. So the issue of sandbagging is not some nefarious necessarily hiding an issue that the parent knows about, but the parent could have found out about. I'm sorry, go ahead. Blackstone probably doesn't go on at any length regarding sandbagging. Maybe you can tell us what you mean by sandbagging or what council generally means. It's a term of art, right? I don't know if it's a term of art. It's a colloquial term, obviously, but it's something that is brought up that the person, that the opposing party didn't have notice of and a chance to develop a record on and chance to develop a response to in a one-line statement. And the other thing is, this is, remember, this is one question and answer. There is also no follow-up here. There's nothing to signal at the hearing that this is going to be even, that there's no request to amend the DPC. There's no request for, there's nothing here to signal that this one statement will be pulled, that the IHO will pull this one reference out of this lengthy transcript and rely on that when that was not described in the due process complaint as this court has required. And that's why it's... Council, with respect to the DOE, does the parent have to show for the DOE that the school is accessible or does the DOE have the burden to show the school is not accessible? I mean, other words, I'm sorry, other words. Let me... Do the parents have to show the school is not accessible or does the DOE have to show the school is accessible? Well, the DOE has a burden at the impartial hearing of establishing that a FAPE was provided. But... What was provided? That a FAPE was provided, a Free Appropriate Public Education was provided. I'm trying to drill down past that general statement... Right, but... ...and focus on accessibility. Right, but the question would be... He has the burden with respect to accessibility. Well, if the due process complaint had alleged that the school was not accessible so that the DOE would have been aware that this was the issue that the parents were going to focus on and therefore the DOE would have had to... ...by saying that the allegation in the due process complaint that the building was not accessible does not show it... It's sort of burden shifting like many discrimination cases. You're saying the plaintiff has to come forward with a sufficient allegation of non-accessibility and only then does the department have to show it is accessible. Well, right, because in the context of addressing the reasons that you would at the hearing that you would address why the parent says that a FAPE would not have been provided at the school and remember that has to also be viewed prospectively and not... But that's why out of everything in an IEP, all the goals, all the subject matter that are covered in an IEP, there were several things listed in the complaint. I know, but we're talking about accessibility. Right, so if they're saying... Your point is the plaintiffs did not sufficiently put accessibility in issue. They did not and they could have and parents do go to the schools or talk to the schools and find out all about what the program would be like, what the school day would be like and then it would emerge perhaps if they're saying that only the entrances are accessible or if they had discussed it with the DOE, they may have learned that there were plans to deal with provision of services in the school. But as it was, the DOE was unprepared to address this new claim raised at the impartial hearing for the first time. So what are we to make of the fact that this all happened during the pandemic? So do you even acknowledge that that might, or maybe someone acknowledges that that might have complicated the ability of the parents to, in good faith, make that allegation? Well, they could have, but they did not get into anything about the school at all. In other words, it's that concept of viewing what's wrong with the placement school prospectively. It's the same sort of speculation because they didn't get into anything with DOE and they could have about the school and the timing, by the way, of the placement recommendation, which the whole process there was delayed by the parents' failure to provide medical forms. But the parents could have held up their due process complaint until they had had some discussion with DOE. Other parents do it, even parents who, like this one, actually enroll their child before the placement is offered. But they make some attempt to discuss the placement school so that they will have an idea what to put in their complaint so that they can make a challenge. Does the court have any other questions about any aspect of the case? Your suggestion, you have been sandbagged, is that right? Well, it's sandbagged in the sense that the DOE was presented with a challenge to an aspect of the fate that was not raised in the due process complaint, and therefore DOE was not able to challenge it. And actually there was no discussion, to my knowledge, of a remand either. But in addition, but that's what happened at the hearing. The DOE had no notice to prepare. The DOE couldn't have questioned its witness further because they don't know anything about what the answer would be on these issues. Does the court have any further questions? So that's a form of waiver, is what you're saying? They waived it? Well, they waived it. They waived it because you have to assert it in the due process complaint. May I ask if the court has further questions? In that case, we'll ask that the court affirm. Thank you very much. Thank you very much. We'll hear some rebuttal. The district could have asked for a redirect examination of its witness. I'm not sure if they didn't want to do that because they would learn that the school was not accessible, but they didn't do that. There's some criticism of the plaintiff having asked a single question, but there was no follow-up by the district with its witness as to what the witness meant by- Do you agree that there's at least a preliminary burden placed on the plaintiff to make certain allegations? Let's just take this accessibility, inaccessibility issue in the first instance. Yes, with an exception, Your Honor. This is not a case where the DOE recommended a 12 to 1 to 4 classroom ratio. A parent was arguing it should be 6 to 1 to 1. This was not about 30 minute services or 60 minute services. The IEP recognized the student needed a handicapped accessible school. So when the district recommended that school, why would any parent, why would any attorney think that they're affirmatively recommending a placement that is not handicapped accessible? There was no way to know this. My clients could not visit at the time, and it wasn't just in June. The school wasn't available to- Was the issue of accessibility or inaccessibility the topic or reference in the IEP? I'm sorry? Was that issue referenced in the IEP? Oh, yes. There was discussion at the CSE meeting that- So what's the reason not to make that allegation to raise the issue in the complaint? Well, it wouldn't have been made in good faith. They recognized the student needed a wheelchair accessible school, then recommended a school. They didn't say we're recommending PS 12, but it's not wheelchair accessible. There was no way that the client could have known at the time. And these DPCs, they're not boilerplate, necessarily, like other complaints. And I do cite the Black's Law dictionary definition of sandbagging. In our reply brief at page 21, it's the practice or instance of a trial lawyer's remaining cagely silent when a possible error occurs at trial, with the hope of preserving an issue for appeal if the court does not correct the problem. That did not happen here. There was nothing about cagely hiding us. If we knew, we would have amended the due process complaint. There would have been no reason not to amend the due process complaint. Unlike a classroom placement regarding size, the school not being accessible would have been a relatively easy issue to prove either at a hearing or otherwise. Was there a request to amend the complaint? There was not before the hearings, no. And then after the hearing, the negative decision, there was an appeal. I don't know enough about the- Was there an opportunity before the appeal to, in view of the finding, amend the complaint? After we got the favorable decision? Your Honor, I don't know. On the administrative side, I don't handle administrative cases. Okay, you don't know. I don't know if you can amend once you get a decision. Yeah. I mean, typically, you could amend at any time in a regular litigation. So I don't see why you wouldn't be able to, but I just can't answer that question, Your Honor. Thank you. Thank you very much. Thank you. Thank you very much, Judge. Thank you. We reserve the decision.